IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DANIEL P. BRANSON and SHAYE BRANSON,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>RECONTRUST CO., N.A.; BANK OF AMERICA, N.A., successor by merger with BAC HOME LOAN SERVICING; BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK as TRUSTEE for the certificate holders CWALT INC., ALTERNATIVE LOAN TRUST 2007-15CB, MORTGAGE PASS-THROUGH CERTIFICATES; MORTGAGE CERTIFICATES; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.;<br><br>　　　　　　Defendants. | CASE NO. 3:11-cv-1526-HO<br><br>ORDER |

## INTRODUCTION

Plaintiffs Daniel Branson and Shaye Branson (plaintiffs), bring eight claims against defendants Recontrust Co., N.A. (Recon); Bank of America (BoA), N.A., successor by merger with

BAC Home Loan Servicing; Bank of New York Mellon (BNYM), FKA The Bank of New York as Trustee for the certificate holders CWALT INC., Alternative Loan Trust 2007-15CB, Mortgage Pass-through Certificates; and Mortgage Electronic Registration Systems Inc. (MERS). [#1-7]. Plaintiffs filed this action in the Circuit Court of the State of Oregon for the County of Multnomah on November 16, 2011. [#1-Ex.7]. Defendants removed the case to U.S. District Court on the basis of diversity jurisdiction, on December 19, 2011. [#1].

Plaintiffs assert six claims of wrongful foreclosure against various defendants: (1) because of failure of agency against BNYM and MERS; (2) because of lack of standing against BNYM and Recon; (3) because of unrecorded assignments against all defendants; (4) against Recon as an invalid successor trustee; (5) against Recon due to defective notice of default and election to sell; (6) for failure of consideration against MERS; as well as claims of (7) constructive ouster and (8) violations of the Fair Debt Collections Practices Act against BoA[1]. [#1-Ex.7]. Plaintiffs also seek declaratory relief stating that defendants have no legal or equitable rights in the note or Deed of Trust (DOT) for purposes of conducting a non-judicial foreclosure. [#1-7, pp. 26-29].

---

[1] Although plaintiff names BAC Home Loan Servicing in the complaint, BoA is the successor by merger to BAC. [#1-7-p3].

2 - ORDER

Defendants initially moved to dismiss all plaintiff's claims. However, at oral argument on February 29, 2012, their oral motion to withdraw their motion to dismiss plaintiff's eighth claim was granted. [#4; #16]. Currently before the court is defendants' remaining motion to dismiss plaintiffs' first seven claims. [#4].

## BACKGROUND

This action arises from an April 17, 2007, loan from Countrywide Home Loans ("Countrywide") in the amount of $276,000, with which plaintiffs financed the purchase of a residential property located at 5733 SE Powell Valley Road in Gresham, Oregon. [#1-Ex.7,p.4,¶¶9-10]. Plaintiffs do not dispute that they defaulted on their loan by approximately March 1, 2009, however, allege that their default was cured between May 1, 2009 and December 9, 2010 and so, Recon "grossly overstat[ed]" the sum owed in the notice of default. [#9-Ex.A,p.1; #12-p.35].

The Deed of Trust (DOT) recorded on May 18, 2007,(Multnomah County Doc. no. 2007-089298), lists Countrywide as the "lender," Daniel Paul Branson as the "borrower" (with "and Shaye Branson" handwritten in following Daniel Paul Branson's name), Fidelity National Title Insurance Co. as the "trustee" and MERS as "a nominee for Lender and Lender's successors and assigns" and the "beneficiary" under the deed. [#1-Ex.1].

The DOT was assigned by MERS to BNYM on February 19, 2010,

3 - ORDER

and that assignment was recorded on February 24, 2010 (Multnomah County Doc. no. 2010-025236). [#1-Ex.2]. Also on February 19, 2010, BNYM appointed Recon as successor trustee. [#1-Ex.4]. The assignment to Recon was also recorded on February 24, 2010, (Multnomah County Doc. no 2010-025237), as was Recon's Notice of Default and Election to Sell (Multnomah County Doc. no 2010-025238). [#1-Ex.3; Ex.7,p.8].

Through a Rescission of Notice of Default dated December 7, 2010, and recorded December 9, 2010, (Multnomah County Doc. no. 2010-155885), Recon withdrew its Notice of Default and Election to Sell. [#1-Ex.5; Ex.7,p.9]. However, in February of 2011, BoA changed the locks to the property without the Bransons' consent[2]. [#12,p.7; #1-Ex.7,p.23,¶82]. Recon issued a second Notice of Default and Election to Sell the property, recorded on April 22, 2011 (Multnomah County doc. no. 2011-048643). [#9-Ex.A]. On June 21, 2011, the City of Gresham issued plaintiffs a notice of civil penalty in the amount of $700 for failing to secure a derelict building. [#1-Ex.6]. The property scheduled for a trustee's sale on August 22, 2011, has been sold. [*Id.*; #5-p.4].

Subsequent to the property's sale, BoA continued to make efforts to collect the loan deficiency from plaintiffs. [#12-p.7]. On September 26, 2011, the Bransons advised BoA in writing

---

[2] The parties disagree about whether plaintiffs were residing at least part-time at the property at that time. [#12-p.7; #5-pp.18-19].

4 - ORDER

(by fax) that they were represented by counsel and did not want to be contacted directly in connection with the debt. *Id.* The Bransons followed up by telephone that same day, however, BoA continued to contact the Bransons directly concerning the deficiency. [#1-Ex.7,¶92; #12-p.7].

## DISCUSSION

### 1. Motions to Dismiss

A Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) is proper only where there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory. *Balisteri v. Pacific Police Dept.*, 901 F.2d 696,699 (9th Cir.1990). The issue is not whether the plaintiff is likely to succeed on the merits but if the complaint is sufficient to entitle the plaintiff to proceed beyond the pleadings in an attempt to establish his claim. *De La Cruz v. Torrey*, 582 F.2d 45, 48 (9th Cir 1978).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 554, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more

5 - ORDER

than a sheer possibility that a defendant has acted unlawfully. *Id.* Thus, the court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Intri-Plex tech., Inc. V. Crest Group, Inc.*, 499 F.3d 1048, 1050 n.2 (9th Cir.2007). The court's reliance on judicially-noticed documents does not convert a motion to dismiss into a summary judgment motion. *Id.* at 1052.

Generally when ruling on a 12(b)(6) motion, a court may only consider allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). However, the court need not accept as true, allegations that contradict facts that may be judicially noticed by the court. *Shwartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir 2007).

### 2.  Plaintiffs' Claims:

Defendants move to dismiss plaintiffs' claims because: their claims for wrongful foreclosure are "flawed and without merit;" their claims for constructive ouster are inadequately pleaded; BoA was authorized under the Deed of Trust (DOT) to secure the property; BoA does not qualify under the Fair Debt Collection Practices Act (FDCPA) as a debt collector and there is no justiciable controversy requiring declaratory relief. [#4; #5].

Plaintiffs allege that MERS, and BNYM violated the

6 - ORDER

provisions of ORS 86.705-795, and conducted a wrongful foreclosure in that "MERS could not act as nominee/agent for a principal to effect an assignment because the principal for whom MERS purported to act as "beneficiary" did not hold Plaintiffs'[] loan on that date." [#1-Ex.7-p.11,¶35; #12-p.13]. Plaintiffs contend that because they do not owe MERS anything, MERS cannot be a beneficiary to their DOT and argue that to find otherwise violates the ORS 86.705(5) definition of a trust deed. [#1-Ex.7-pp.11-12, ¶¶ 36-37]. Further, plaintiffs assert that nothing in the DOT gives MERS the power to assign security interests because the DOT limits MERS role to acting where "necessary to comply with law or custom" and nothing about their loan makes it necessary for MERS to effect such an assignment. [#1-Ex.7,-p.11, ¶36; #12-pp.18-19].

However, this court has previously found that the DOT (as here), in specifying MERS as a beneficiary and authorizing MERS to act as nominee for the lender, does not violate the Oregon Trust Deed Act (OTDA). *Burgett v. MERS,* 09-6244-HO (dated October 19, 2010)(quoting letter decision in *Parkin Elec. Inc. v. Safetencu*, No. LV08040727, dated March 12, 2009). In fact, the majority of Oregon trial courts[3] have concluded that because MERS

---

[3] The issue of whether MERS is a valid beneficiary under the Trust Deed has been addressed in a number of cases within the District of Oregon. Because judges have reached different conclusions, the judges in this District, have certified this and
(continued...)

7 - ORDER

is named in the trust deed as a beneficiary, it *is* a beneficiary as defined by Oregon statutes. *James v. Recontrust Co.,* 2011, WL 3841558, *8 (listing cases). In this instance, plaintiffs executed their trust deed naming MERS as beneficiary. [#1-Ex.1-pp.2, 11]. In doing so, plaintiffs granted MERS the authority to enforce the terms of the DOT on behalf of the Lender including assignment of the beneficial interest to BNYM. [#1-Ex.1-p.3; #1-Ex. 2].

Plaintiffs' second claim alleges that the "Lender did not hold Plaintiffs' loan on February 24, 2010 and thus there was nothing for MERS to assign on its behalf." {#1-Ex.7-p.12,¶39]. Plaintiffs argue that even if MERS' status as beneficiary were enforceable it cannot survive assignment of the lender's original interest to new successors in interest in the absence of renewed assignment of beneficial interest from the lender's assignee to MERS. However, plaintiffs' claim that MERS is a sham beneficiary is fatally undercut by the plain language of plaintiffs' DOT which describes MERS role and authorizes the transfer of interests in their loan.

Similarly, plaintiffs' contention that even if MERS did validly assign the note and DOT to the real Estate Mortgage

---

[3](...continued)
related issues to the Oregon Supreme Court. In the meantime, it was decided not to stay pending cases addressing MERS issues. See *Graham v. Recontrust Co., N.A., et al.,* 3:11-CV-01339-BR at 10 n. 1 (Mar. 27, 2012).

8 - ORDER

Investment Conduit (REMIC) for which BNYM acts as trustee, the transfer took place after the closing date described in the Pooling and Service Agreement (PSA), and so violated both the PSA and New York law, is unprevailing (which plaintiffs' briefing appears to have recognized), and fails given that plaintiffs lack standing to enforce the PSA argument. [#1-Ex.7, pp.14-18,¶¶44-56; #1-Ex.1-p.9].

The DOT provides that the lender can transfer its interest in the note [#1-Ex.1-p.9], and thus, MERS as designated DOT beneficiary could assign its interest to BNYM. This assignment was recorded in accordance with ORS 86.735. [#1-Ex.2]. Oregon law does not require the note's transfer to be recorded. See e.g., *Crowden v. Fed.Nat'l Mortgage Assoc.*, 2011 WL 6740741, *8 (D.Or. Dec. 22, 2011); see also *James*, 2011 WL 3841558 at *11.

Plaintiffs argue that Recon is an invalid successor trustee and thus is unqualified to issue a Notion of Default and Election to Sell because MERS lacked the authority to appoint Recon and Recon issued its Notice of Default prior to its appointment. [#1-Ex.7, However, the record shows that MERS assigned the DOT (and recorded that assignation), to BNYM and it was BNYM not MERS that appointed Recon as successor trustee. [#1-Exs.2 and 4]. Similarly, the record demonstrates that although the documents are attached out of order, the events were recorded in immediate but correct sequence - on February 24, 2010, the Assignment of

9 - ORDER

the DOT was recorded first, Multnomah County Record No. 2010-025236, [#1-Ex.2]; then the Appointment of Successor Trustee, second, No. 2010-025237, [#1-Ex.4]; and finally the Notice of Default third, No. 2010-025238, [#1-Ex.3].

Plaintiffs allege that Recon's second Notice of Default overstated the sum they owed because the previous rescission of the default calculated the alleged default amount from March 2009 rather than December 2010 (the month in which the rescission was recorded). [#1-Ex.7-p.21,¶¶69-70]. However, plaintiff's allegation ignores the Rescission's plain language which states:

> "This rescission shall not be construed as waiving or affecting any breach or default (past, present or future) under said Trust Deed or as impairing any right or remedy thereunder . . .but is . . only an election without prejudice, not to cause a sale to be made pursuant to said notice so recorded."

#1-Ex.2,p.1].

Under Oregon law, a non-judicial foreclosure may only take place if all assignments of beneficial interest in the DOT have been properly recorded. *Burgett v. MERS Inc.*, 2010 WL 4282105 (D.Or. October 20, 2010). The foreclosure statute specifically requires recording of "any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee." ORS 86.735(1).

In this instance, all transfers of the DOT have been recorded in compliance with ORS 86.735(1). MERS was the proper beneficiary under the DOT and transferred (and recorded that

10 - ORDER

transfer), its interest to BNYM who appointed (and recorded that appointment), Recon as successor trustee. Recon filed proper notice of default and election to sell twice, properly recording in both instances and including the appropriate proof of compliance (also recorded). [#9-Ex.B].

Plaintiffs attempt to bolster their claim of constructive ouster asserting in their briefing that they "still resided at the property several days out of the week . . .were actively maintaining the property" and had "substantial amounts of furniture, equipment and personal items at the property" and they, not BoA, were the record owners of the property at the time BoA changed the locks. [#1-Ex.7-pp.23-24; #12-p.37]. However, plaintiffs' allegations ignore the language of their DOT which provides:

> "If (a) Borrower fails to perform the covenants and agreements . . . or (c) Borrower has abandoned the Property, then the Lender may do and pay for whatever is reasonable or appropriate to protect Lender's property including . . .securing the Property [which] includes . . .entering to make repairs, change locks . . . ."

[#1-Ex.1-p.6]. While the details of the lock-changing incident are unclear from the complaint, plaintiffs' allegations regarding this issue are insufficient to overturn the foreclosure sale resulting from plaintiffs' default (prior to the incident), on their obligation.

Finally, plaintiffs argue that BoA violated the Fair Debt Collection Practices Act (FDCPA) when it continued to contact

11 - ORDER

them after they had informed it that they were represented by counsel. [#1-Ex.7-pp24-26]. While it is inappropriate for BoA to continue to call consumers directly (even when attempting to collect a deficiency), after learning that the consumers are represented by counsel, the remedy for such inappropriate behavior does not lie in the FDCPA because BoA is specifically excluded by the statutory definition of a debt collector. 15 U.S.C. § 1692a(6)(F)(iii).

The FDCPA defines "debt collector" as:

> "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be due another."

15 U.S.C. § 1692a(6). Exempted from the definition of "debt collector" is:

> "any person collecting or attempting to collect any debt owed or due or asserted owed or due another to the extent such activity ... (ii) concerns a debt owed which was originated by such person . . . ."

15 U.S.C. § 1692a(6)(F)(ii). The definition also excludes

> "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor."

15 U.S.C. § 1692a(6)(A). "Creditor" is defined as:

> "any person who offers or extends credit creating a debt or to whom a debt is owed."

Id. at 1692a(4).

Thus, under the FDCPA, a debt collector is one whose "principal purpose" is the collection of debts, or who "regularly

collects or attempt to collect ... debts." 15 U.S.C. § 1692a(6). The definition explicitly excludes persons who collect debts "to the extent such activity ... (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

It is clear from the face of the complaint that BoA was the loan servicer of plaintiffs' loan. [#1-Ex.7-p.3,¶5]. A "debt collector" does not include a consumer's creditors. *Reed v. American Honda Fin. Corp.*, 2005 WL 1398214 *3 (D. Or. June 10, 2005). Nor are mortgage servicers debt collectors under the Act. *Stewart v. MERS*, 2010 WL 1054384 *9 (D.Or. Feb. 18, 2010). Accordingly, Plaintiff's FDCPA claims against the BoA fail to state a claim.

Plaintiffs seek declaratory relief requesting that this court find the "purported power of sale contained in the loan of no force and effect because Defendants actions in the processing, handling, and attempted foreclosure of this loan has contained numerous violations of state and federal law." [#1-pp.9-10]. Plaintiffs further request that the court "cause the title of the properties to remain in the plaintiffs name . . . during the pendency of this litigation." *Id.*

In other words, plaintiffs seek an equitable remedy -the overturning of a non-judicial foreclosure sale - without any indication that they were prepared to cure their default. As

13 - ORDER

this court has previously noted, while a mortgage is said to carry with it an equity of redemption, that right exists only until the foreclosure sale and only if the mortgagor reimburses the mortgagee and cures the default. *Blacks Law Dictionary*, 561 (7th Ed. 1999).

The record before the court indicates that plaintiffs have been given legally sufficient notice, are in default on their loan and plaintiffs have not offered anything to indicate that they were able to tender the debt in order to disrupt the non-judicial foreclosure sale. In an instance such as this where the foreclosure sale was due to plaintiffs' failure to make their loan payments and subsequently to cure their default, there is nothing to suggest that the declaratory relief they seek is equitable. Plaintiffs' request for declaratory judgment is therefore denied.

## CONCLUSION

Based on the foregoing reasoning, defendants Motion to Dismiss [#4] is GRANTED. This action is hereby dismissed.

IT IS SO ORDERED.

DATED this 26th day of April, 2012.

*Michael R. Hogan*
United States District Judge

14 - ORDER